AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: *Jordan Gramm* 3/25/24

AMG
3/26/24

# UNITED STATES DISTRICT COURT
### for the
Western District of Oklahoma

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. M-24- 260-AMG |
| SUBJECT DEVICE 1, a black Samsung Galaxy A14 5G cellular phone, with assigned phone number of (405) 990-3117 | ) ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, which is attached and incorporated by reference.

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of and/or access with intent to view child pornography |

The application is based on these facts:
See attached Affidavit of Special Agent Nicholas Ustach.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Nicholas Ustach, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **3/26/24**

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma

_____
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Nicholas Ustach, a Special Agent with the Department of Homeland Security, Homeland Security Investigations, being duly sworn, depose and state as follows:

### INTRODUCTION

1.      I have been employed as a Special Agent ("SA") with Homeland Security Investigations ("HSI") since September 11, 2022.  I spent six months at the Federal Law Enforcement Training Center completing the Criminal Investigator Training Program and HSI Special Agent Training Programs.  I previously spent four years employed with US Customs and Border Protection.  In the course of my duties, I was exposed to many human and drug smuggling incidents, interviewed parties applying for admission at the Port of Entry, performed searches of vehicles and persons, and processed immigration cases that presented themselves at the port.  I participated in multiple discoveries of drugs concealed within vehicles, merchandise, and on persons and performed seizures of the drugs.  Before that, I received a Bachelor of Science in Sociology from Brigham Young University and a Master of Science in Criminal Justice from Weber State University.

2.      I am currently assigned to HSI Oklahoma City, Oklahoma.  As part of my duties, I am tasked with investigating federal criminal cybercrime violations.  I have both training and experience conducting child exploitation and child pornography investigations.  Moreover, I have access to the institutional knowledge developed around this type of investigation by working with other experienced child exploitation criminal

investigators. I have become aware of numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, to include electronic media.

3.     As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

4.     I am investigating the online activities of Zane August FLOREZ. As explained below, there is probable cause to believe FLOREZ possessed or accessed with intent to view material defined as child pornography (18 U.S.C. § 2256(8)), in violation of 18 U.S.C. § 2252A(a)(5)(B), referred to as the "SUBJECT OFFENSE."

5.     This Affidavit seeks authorization to search FLOREZ's CELL PHONE ONE, with assigned phone number of (405) 990-3117, further described in Attachment A and referred to as "SUBJECT DEVICE 1," and seize therefrom the items described in Attachment B, which constitute instrumentalities, fruits, and evidence of the SUBJECT OFFENSE.

6.     This Affidavit also seeks authorization to search FLOREZ's CELL PHONE TWO, with serial number R28K40YVJLX, further described in Attachment A and referred to as the "SUBJECT DEVICE 2," and seize therefrom the items described in Attachment B, which constitute instrumentalities, fruits, and evidence of the SUBJECT OFFENSE.

7.     SUBJECT DEVICE 1 and SUBJECT DEVICE 2 will be referred to collectively as the "SUBJECT DEVICES."

8.     The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICES for the purpose of identifying electronically stored data particularly

2

described in Attachment B.

9.     The SUBJECT DEVICES are currently secured at the United States Probation and Pretrial Services office located at 215 Dean A. McGee Ave., Room 201, Oklahoma City, OK 73102.  As set forth below, there is probable cause to believe that FLOREZ possessed, owned, and used the SUBJECT DEVICES to commit the SUBJECT OFFENSE.

10.     The facts in this Affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents.  Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

11.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on devices.  This information can sometimes be recovered with forensics tools.

12.     I know that cellular telephones are often equipped with digital cameras and those phones possess the capability to transmit and/or store electronic images.  I know that in many cases, cellular telephones maintain photographs of illegal activities.  These photos are sometimes stored in cellular phones and often are transmitted or sent from one electronic media device to another.  I also know that cellular phones may contain notes

3

regarding potential illegal acts that are recorded by the subject who possesses the electronics. Furthermore, I know that text messages and emails are often used by two or more persons to communicate information regarding illegal activities, between principals and co-conspirators of those crimes.

13.    I know that cellular telephones are utilized by the majority of individuals in the United States and have become a staple of communication between individuals using text messaging, visual and audible communications, as well as those using applications like Dropbox. Additionally, individuals utilize their cellular devices to take and store pictures and keep notes. Communications on phones are kept for long periods and transferred from one phone to another when replaced. This is done through the use of Cloud storage and direct transfer conducted at the time of purchase or by the individual themselves. Individuals utilize this method as not to lose data that is stored on the phone such as contacts, photos, notes, and other important information to the individual.

14.    Cellular telephones are often used to facilitate offenses and allow criminals to maintain communication with each other before, during, and after the commission of offenses. I am aware that cellular telephones have the capacity to store a vast amount of information, including but not limited to: telephone numbers, voice messages, text messages, e-mail, photographs, videos, address books, records, phone call histories, contact and other information.

15.    *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as

4

direct evidence of the SUBJECT OFFENSE, but also forensic evidence that establishes how the SUBJECT DEVICES were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICES because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.

5

Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

16.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICES consistent with the warrant. The examination may require authorities to employ techniques (including but not limited to computer-assisted scans of the entire medium) that might expose many parts of the SUBJECT DEVICES to human inspection in order to determine whether it is evidence described by the warrant.

17.    *Manner of execution.* Because this warrant seeks only permission to examine the SUBJECT DEVICES already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause to authorize execution of the warrant at any time in the day or night.

18.    *Methods of examination.* In conducting this examination, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crime(s) under investigation, including but not limited to undertaking a cursory inspection of all information within the SUBJECT DEVICES. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is

subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with stored cellular device data, such as pictures and videos, do not store as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications associated with a cellular device, as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications. Consequently, often many communications in cellular device data that are relevant to an investigation do not contain any searched keywords.

## TECHNICAL TERMS

19.    Based on my training and experience, I use the following technical terms to convey the following meanings:

     a.  "Computer" refers to any electronic, magnetic, optical, electrochemical, or other high-speed data processing device capable of performing logical or storage functions, and includes any data storage facility or communications facility directly related to such a device. As used herein, "computer" also incorporates digital devices that complete these same functions, such as smartphones, tablets, connected devices, and e-readers. *See* 18 U.S.C. § 1030(e)(1).

b. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

c. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.

8

Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

d.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the

current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet

10

service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

20.    Based on my training, experience, and research, I believe that the SUBJECT DEVICES have capabilities that allow them to serve as a wireless telephone, computer, digital camera, portable media player, GPS navigation device, and tablet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## STATEMENT OF PROBABLE CAUSE

21.    On or about September 27, 2023, the National Center for Missing and Exploited Children (NCMEC) received a report from Electronic Service Provider (ESP) Dropbox, that a Dropbox account, with verified email address zflorez14@gmail.com, was used to upload digital files, which upon review by Dropbox personnel, were believed to contain Child Sexual Abuse Material (CSAM). Additionally, Dropbox reported that the account's screen/user name was ZANE FLOREZ, the Electronic Service Provider (ESP) User ID was 326666651, and the IP address used to upload the CSAM was 158.62.131.2.

11

NCMEC personnel analyzed the information provided by Dropbox. Based on geolocation data associated with the reported IP address used to upload the CSAM to the reported Dropbox account, which resolved to Newalla, Oklahoma, NCMEC personnel forwarded NCMEC CyberTip #175095790 to the Oklahoma State Bureau of Investigation (OSBI) for further investigation.

22.     On or about October 3, 2023, CyberTip #175095790 was assigned to Analyst Leticia Hameury. The CyberTip contained 20 video files, 4 of them being duplicates. The videos depicted several different pubescent females (and some appeared to be pre-pubescent) either undressing in front of the camera and/or masturbating. In some of those videos, it appeared that the female children were engaging in online video chatting. Dropbox also provided a User File Log which contained information about some of the videos such as size, timestamp, user, and path. Of note, the User File Log indicated an "attempted share" on September 27, 2023, of one file that depicted child pornography.[1]

23.     On or about November 16, 2023, OSBI SA Blaine Phillips obtained a state search warrant for Google Inc. for the account associated with the email address of zflorez14@gmail.com. On or about November 22, 2023, Google provided the requested records to SA Phillips. The records provided by Google included the subscriber information for the account with the name on the account as Zane FLOREZ with a date of birth of 11/XX/97, and phone number (405) 990-3117. A document attached to the Google

---

[1] Based on information provided by Dropbox, the video may or may not have been the only file that the user was attempting to share.

Drive contained FLOREZ's name with the same date of birth and a social security number of XXX-XX-X103. An Oklahoma Driver's License Number W03542077 and an address of 5201 South Harrah Rd., Newalla, OK 74857 were also found within the document.

24.    On or about November 16, 2023, OSBI SA Phillips obtained a state search warrant for Dropbox Inc., for the account associated with the Username ZANE FLOREZ, ESP User ID 326666651. On or about November 22, 2023, Dropbox Inc. provided the requested records to SA Phillips. The records provided by Dropbox showed that the account had been closed. However, the account's content had been preserved and contained 1,410 video files. All files were pornographic in nature, with some containing age-difficult material and some containing CSAM.

25.    On or about November 21, 2023, OSBI SA Phillips requested a multi-county grand jury subpoena to OEC Fiber for subscriber information related to IP address 158.62.131.2, the IP address associated with the NCMEC tip described above. On or about December 1, 2023, OEC Fiber responded. The provided records indicated that the IP address was utilized by an account holder with the name of Toni Caldwell at 5201 S. Harrah Rd., Newalla, OK 74857.[2]

26.    On or about January 19, 2024, OSBI SA Olivia Burrus requested a criminal history search for FLOREZ. Results from the search indicated that FLOREZ was currently on federal probation for Felony Theft within Indian Country and would be on probation until May 30, 2025.

---

[2] Based on the investigation, Toni Caldwell is FLOREZ's mother.

27.     On or about January 23, 2024, OSBI SA Burrus contacted United States Probation Officers (USPO) for the Western District of Oklahoma and informed them of the current investigation regarding CSAM associated with FLOREZ's Dropbox account.

28.     On or about January 31, 2024, OSBI SA Burrus contacted NCMEC about the files attached to the CyberTip. NCMEC provided information that one file, titled "b1618.mp4", was a video of a known child. The file was part of the series titled, "BEST NECKLACE". In this video, a prepubescent female removes her underwear and exposes her genitals to the camera. The female then lifts her shirt and exposes her breasts.

29.     During the course of OSBI's investigation, OSBI also discovered that FLOREZ was interviewed by the Federal Bureau of Investigation (FBI) in 2017 about CSAM material associated with his Dropbox account, which had come to the FBI's attention based on NCMEC CyberTip # 18575820. According to a report from FLOREZ's interview, FLOREZ admitted that he downloaded child pornography.

30.     On or about February 1, 2024, USPO personnel from the Western District of Oklahoma performed a search of FLOREZ's residence at 5201 S. Harrah Rd. Newalla, OK 74857. As a condition of FLOREZ's supervised release, he, his residence, and any electronic device in his possession is subject to search by USPO personnel. USPO seized the SUBJECT DEVICES during the search of FLOREZ's residence and the SUBJECT DEVICES were transported to the United States Probation and Pretrial Services office located at 215 Dean A. McGee Ave., Room 201, Oklahoma City, OK 73102, where they are presently secured. To my knowledge, probation officers have not located child

14

pornography files saved to the SUBJECT DEVICES. However, during a search of the SUBJECT DEVICES, SUBJECT DEVICE 2 was found to contain a deleted note with links to files on MEGA, a web-based file hosting service. USPO officers reached out to MEGA, which confirmed that the links were to files that contained CSAM. SUBJECT DEVICE 1 was found to contain an application named "Secure Folder" that the USPO was unable to open due to a pattern lock that was needed to open the application. When asked about the pattern lock, FLOREZ told the USPO he could not remember the pattern to unlock the application.

31.    Based on the foregoing, I believe evidence of violations of the SUBJECT OFFENSE would remain on the SUBJECT DEVICES, which have not yet been returned to FLOREZ.

## CONCLUSION

32.    Based on the foregoing, there is probable cause to believe that the SUBJECT OFFENSE has been violated, and that the contraband, property, evidence, fruits, and instrumentalities of this offense, more fully described in Attachment B, are located on the SUBJECT DEVICES. I respectfully request that this Court issue a search warrant authorizing the search of the SUBJECT DEVICES described in Attachment A to seize the items described in Attachment B.

Nicholas Ustach
Special Agent
Homeland Security Investigations

**SUBSCRIBED AND SWORN** to before me this 26th day of March, 2024.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE

16

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

This warrant seeks to search FLOREZ's black Samsung Galaxy A14 5G cellular phone, with assigned phone number of (405) 990-3117 (SUBJECT DEVICE 1). SUBJECT DEVICE 1 is currently secured at the United States Probation and Pretrial Services office, located at 215 Dean A. McGee Ave., Room 201, Oklahoma City, OK 73102, and it is depicted below:

 

17

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

All records on the SUBJECT DEVICE described in Attachment A that relate to violations of the SUBJECT OFFENSE:

### I.    Digital Evidence

1.    Any passwords, password files, test keys, encryption codes, or other information necessary to access the SUBJECT DEVICE or necessary to locate any evidence described below;

2.    All records, documents, programs, applications, or materials created, modified, or stored in any form, including in digital form, on any computer or digital device described in Attachment A, that show the actual user(s) of the computer or digital device during the time the device was used to commit the crimes referenced above, including the web browser's history; temporary Internet files; cookies, bookmarked, or favorite web pages; email addresses used from the device; MAC IDs and/or Internet Protocol addresses used by the device; email, instant messages, and other electronic communications; address books; contact lists; records of social networking and online service usage; software that would allow others to control the digital device such as viruses, Trojan horses, and other forms of malicious software; evidence of the absence of such malicious software, or of the presence or absence of security software designed to detect malicious software;

3.    Evidence that the device was attached to or used as a data storage device for some other device, or that another device was attached to the device; and

18

4.    Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer or digital device;

## II.    Records, Documents, and Visual Depictions

5.    Any records, documents, or materials, including any correspondence, that involve any communication with any person that appear to be coercive in nature for the purposes of grooming or obtaining images from any person;

6.    Any records, documents, or materials, including correspondence, that pertain to the production, transportation, distribution, receipt, access, or possession of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256;

7.    All originals and copies (physical or digital) of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256;

8.    Any motion pictures or digital video clips of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256; video recordings which are self-produced and pertain to sexually explicit images of minors; or video recordings of minors which may assist in the location of minor victims of child exploitation or child abuse;

9.    Any records, documents, or materials which include offers to transmit, through interstate commerce by any means (including by computer), any visual depiction

19

of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256;

10. Any records, documents, or materials relating to the production, reproduction, receipt, shipment, trade, purchase, or a transaction of any kind involving the transmission, through interstate commerce (including by computer), of any visual depiction of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256;

11. Any records, documents, or materials naming or identifying minors visually depicted while engaging in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256;

12. Any records of Internet usage, including records containing screen names, usernames, and e-mail addresses, and identities assumed for the purposes of communication on the Internet or on any app installed on the SUBJECT DEVICE;

13. Any records, documents, or materials referring or pertaining to communications with others, whether in person, by telephone, or online, for the purpose of distributing or transporting child pornography, including chat logs, call logs, address book or contact list entries, or digital images sent or received;

14. Information or evidence of any websites visited, search terms, photographs, videos, images, reports, definitions, stories, books, music, lyrics, emails, videos, messages, and/or notes associated with child pornography or those who collect, disseminate, or trade in child pornography;

15. Any records regarding the use of Dropbox; and

16. Any records, documents, materials, videos, or photographs that would allow investigators to ascertain who used the SUBJECT DEVICE.

As used above, the terms records, documents, programs, applications, or materials includes records, documents, programs, applications or materials created, modified or stored in any form including digital or electronic form.